# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Valerie S. Lerch, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 748 C.D. 2017 |
| | : | Argued: February 6, 2018 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
                     HONORABLE MICHAEL H. WOJCIK, Judge
                     HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION**
**BY JUDGE SIMPSON**                          **FILED: March 12, 2018**

Valerie S. Lerch (Claimant) petitions for review from an order of the Unemployment Compensation Board of Review (Board), reducing Claimant's unemployment compensation (UC) benefits under the Pennsylvania Unemployment Compensation Law (UC Law).[1]  The Board reduced Claimant's UC benefits by $506 per week under Section 402(h) of the UC Law, 43 P.S. §802(h), based on her income from her part-time self-employment (sideline business).  Upon review,[2] we reverse and remand.

---

[1]  Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §§751-919.10.

[2] This Court's review of a final decision by the Board is limited to determining whether necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated.  Johns v. Unemployment Comp. Bd. of Review, 87 A.3d 1006 (Pa. Cmwlth.), appeal denied, 97 A.3d 746 (Pa. 2014).  Where an issue is one of statutory interpretation, it is a question of law subject to plenary review.  Danielle Viktor, Ltd. v. Dep't of Labor & Indus., Bur. of Emp'r Tax Operations, 892 A.2d 781 (Pa. 2006).

# I. Background

While employed full time, Claimant started a sideline event-planning business. Claimant is the sole proprietor of the business and has no employees. She spends between one and eight hours per week on her sideline business. Claimant testified she spends one to two hours per week on the business most of the year. She spends five to eight hours per week during busy periods (about a month in the spring and another month in the fall).

Claimant's sideline business generated gross revenue of $27,510 in 2015 and $15,635 in 2016. Her federal tax return for 2015 reflected a deduction of $1,380 for supplies. As her sideline business provides only services, Claimant's tax return did not reflect any deduction for the cost of goods sold. However, Claimant deducted a number of other necessary business expenses, the largest of which was the cost of renting facilities for the events she planned for her clients. <u>Claimant's sideline business operated at a net loss</u> of $5,767 in 2015 and $7,857 in 2016.

Claimant applied for UC benefits after separation from her full-time job in November 2016. She did not increase the amount of time she spends on her sideline business after her separation from full-time employment. She remains available for full-time work.

The Board reduced Claimant's weekly UC benefit by $506, based on its calculation of Claimant's net income from her sideline business. Pursuant to 34 Pa. Code §65.121 (Section 65.121), the Board calculated Claimant's net business income by deducting from her gross business income only the cost of supplies (there

2

being no cost of goods sold), which excluded the bulk of Claimant's business expenses.

Claimant filed a timely petition for review to this Court.

## II. Issues

Claimant presents three issues for review, which we summarize as follows:

>(1)    The Board erred in ignoring two 1964 decisions of the Superior Court invalidating Bureau of Employment Security Regulation 120 (1960) (Regulation 120), which was identical to Section 65.121. Further, Section 65.121 is invalid because the Department of Labor and Industry (Department) was not free to reenact a regulation after an appellate court recognized its invalidity.

>(2)    The regulation is beyond the scope of the Department's regulating authority under the UC Law, and is unreasonable because it treats gross income as net income for service businesses, thus ignoring the UC Law's provision for reduction of UC benefits by the amount of "net earnings" of sideline businesses.

>(3)    The Board failed to consider Claimant's alternative argument that her sideline business is seasonal and should not reduce her UC benefits on a year-round basis.

>We summarize the Board's responsive arguments as follows:

>(1)    The Board is not bound by the Superior Court's decisions. The Department's regulation is legislative rather than interpretive,[3] and therefore the Board and this Court must follow it.

---

[3]   The distinction between a legislative regulation and an interpretive regulation is discussed below.

(2)     The regulation is binding because the Department adopted it pursuant to delegated legislative power, Claimant did not point to any improper procedure in its adoption, and Claimant did not overcome the presumption of reasonableness.

(3)     Claimant's evidence concerning the seasonal nature of her sideline business was too vague to allow accurate proration of her earnings.

## III. Discussion

Section 402 of the UC Law, relating to sideline businesses, provides, in pertinent part:

> An employe shall be ineligible for compensation for any week—
>
> * * * *
>
> (h) In which he is engaged in self-employment: Provided, however, That an employe who is able and available for full-time work shall be deemed not engaged in self-employment by reason of continued participation without substantial change during a period of unemployment in any activity including farming operations undertaken while customarily employed by an employer in full-time work whether or not such work is in 'employment' as defined in this act and continued subsequent to separation from such work when such activity is not engaged in as a primary source of livelihood. <u>Net earnings received by the employe with respect to such activity shall be deemed remuneration paid or payable with respect to such period as shall be determined by rules and regulations of the [D]epartment.</u>

43 P.S. §802(h) (emphasis added).

The language of Section 402(h) remains unchanged from the original 1959 enactment at issue in the Superior Court's decisions in two companion cases,

4

Department of Labor & Industry v. Unemployment Compensation Board of Review (Springer), 199 A.2d 481 (Pa. Super. 1964), and Department of Labor & Industry v. Unemployment Compensation Board of Review (Vitolins) 199 A.2d 474 (Pa. Super. 1964), on which Claimant here relies in support of her primary argument.

Section 201(a) of the UC Law gives the Department authority to enact implementing rules and regulations. 43 P.S. §761(a). The Department may adopt such rules and regulations as it deems necessary or suitable, provided that its rules and regulations are not inconsistent with the provisions of the UC Law. Id.

Following the 1959 amendment of the UC Law adding Section 402(h), the Department issued regulations governing the adjustment of UC benefits based on earnings from a sideline business. Regulation 120 prescribed the method of calculating the net income from the sideline business, by which a claimant's UC benefits would be reduced. It provided, in pertinent part: "For a claimant engaged in a business other than farming, 'gross income' from sales and services shall be reduced by subtraction of the cost, if any, of goods sold. Cost of goods sold shall include the total cost of merchandise, cost of labor, and cost of material and supplies." Regulation 120.

The Department adopted the current regulation, Section 65.121, in 1968, shortly after both the enactment of the Commonwealth Documents Law[4] and the creation of this Court. Section 65.121 provides, in pertinent part: "For a claimant engaged in a business other than farming, 'gross income' from sales and services

---

[4] Act of July 31, 1968 (P.L. 769), 45 P.S. §§1201-1208.

5

shall be reduced by subtraction of the cost, if any, of goods sold. Cost of goods sold shall include the total cost of merchandise, cost of labor and cost of material and supplies." Significantly, Regulation 120 and Section 65.121 are identical except that Section 65.121 omits Regulation 120's non-substantive Oxford comma.

## A. Effect of the Superior Court Precedents
### 1. The <u>Vitolins</u> and <u>Springer</u> Decisions

In <u>Vitolins</u>, the claimant and his family operated a farm as a sideline business. The farm generated its income from the raising and selling of livestock. After deduction of the expenses of running the farm, it operated at a net loss. For UC benefit calculations, however, Regulation 120 allowed deductions from gross income of farms only for "expenses for labor, feed, seeds and plants, fertilizer and lime." <u>Vitolins</u>, 199 A.2d at 476. As a result, an initial UC determination reduced the claimant's weekly benefits by 85% based on income from the sideline family business, even though that business was operating at a loss. A referee later modified the UC benefits award, allowing all of the claimant's business deductions in calculating the farm's net income, and the Board affirmed. The Superior Court affirmed, reasoning that all deductions were proper notwithstanding the limiting language in Regulation 120.

The Superior Court explained that before Section 402(h) was added to the UC Law in 1959, anyone engaged in a part-time sideline business was considered self-employed and ineligible for UC benefits, even if the business operated at a net loss. However, anyone employed part-time for wages by another employer could

6

still be eligible for partial UC benefits. Section 402(h) was intended to correct this "gross inequity" in the UC Law. Vitolins, 199 A.2d at 476-77.

The Superior Court acknowledged the Department's authority to promulgate rules and regulations not inconsistent with the UC Law. Nevertheless, in Section 402(h), the statute's delegation of regulatory authority recognized the cyclical nature of many sideline businesses. This necessitated careful allocation of sporadic sideline income in order to treat UC claimants fairly. The Superior Court in Vitolins reasoned:

> The legislature undoubtedly realized that a self-employed person's income might be produced in irregular amounts and at irregular periods …. It was, therefore, necessary to devise a method to prorate the fruits of the part-time self-employment over the entire year to arrive at a fair estimate of the claimant's weekly net earnings from such activity. This task was delegated by the legislature to the [D]epartment in the following language: 'Net earnings received by the employe with respect to [self-employment] shall be remuneration paid or payable with respect to such period as shall be determined by rules and regulations of the [D]epartment.' We interpret this language, as did the board, to mean that the [D]epartment has power to make regulations as to the period. We do not believe that the legislature intended to delegate to the [D]epartment the power to define 'net earnings' by rules and regulations.

Id. at 477 (emphasis added).

The Superior Court concluded the term "net earnings," which is not defined in the UC Law, must have its plain everyday meaning. Citing Jones and Nimick Manufacturing Co. v. Commonwealth, 69 Pa. 137 (1871), WEBSTER'S NEW INTERNATIONAL DICTIONARY (2nd ed.), and decisions from other jurisdictions, the

7

Superior Court found that in everyday usage, the "net earnings" of a business are what remains <u>after deducting expenses</u>. <u>Vitolins</u>, 199 A.2d at 478. Regulation 120, "by selecting only a few of the numerous [sideline business] expenses to the exclusion of all others, completely disregard[ed] the common meaning of 'net earnings.'" <u>Id.</u> The Superior Court declared this effect of Regulation 120 "absurd." <u>Id.</u>

In <u>Springer</u>, a companion case decided the same day as <u>Vitolins</u>, the claimant had a sideline refrigerator repair business. Because it was a service business, the claimant had no expense deduction for the cost of goods sold, although he deducted many other business expenses. Because Regulation 120 allowed deduction of only the cost of goods from gross income, all of the claimant's business expense deductions were initially disallowed in calculating his net income for UC benefit purposes. On appeal, however, the Board allowed all the deductions. Referring to its rationale in <u>Vitolins</u>, the Superior Court again affirmed the Board.

## 2. The Parties' Positions

Claimant argues this Court should follow the Superior Court's decisions in <u>Vitolins</u> and <u>Springer</u>. The former and current versions of the regulation are identical. Superior Court decisions are persuasive authority for this Court, and at the time it decided <u>Vitolins</u> and <u>Springer</u>, the Superior Court was the appellate court with jurisdiction over administrative appeals. Claimant asserts the facts of this case are closely analogous to those in <u>Vitolins</u> and <u>Springer.</u> Claimant therefore argues this Court should apply the same reasoning concerning the validity of Section 65.121 as the Superior Court applied concerning Regulation 120.

8

The Board argues it is not bound by the Superior Court's ruling concerning Regulation 120 because the court decided <u>Vitolins</u> and <u>Springer</u> before the current regulation, Section 65.121, was adopted. The Board maintains that although Superior Court decisions may be persuasive, they are not binding authority for this Court. The Board asserts the Department was free to define "net earnings" by regulation because the statute did not define it, and the Board is not free to ignore the current regulation. The Board posits that the legal analysis in <u>Vitolins</u> and <u>Springer</u> is outmoded. The Board suggests the Superior Court's analysis is no longer persuasive because the Superior Court did not examine Regulation 120 as a legislative regulation entitled to a presumption of reasonableness, and therefore its reasoning is not consistent with modern jurisprudence.

### 3. Analysis

In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues. <u>Donaldson v. Workers' Comp. Appeal Bd. (Pa. Workers' Comp. Security Fund)</u>, 728 A.2d 994 (Pa. Cmwlth. 1999). Here, the Superior Court's holdings are particularly persuasive because in deciding <u>Vitolins</u> and <u>Springer</u>, the Superior Court was exercising jurisdiction that now lies with this Court.

In <u>Vitolins</u> and <u>Springer</u>, the Superior Court concluded that Section 402(h) does not authorize the Department to define "net earnings" by regulation. Further, the Superior Court determined the ordinary meaning of "net earnings" required consideration of all business deductions; to do otherwise would frustrate the intent of Section 402(h).

9

The Board's argument that <u>Vitolins</u> and <u>Springer</u> lack persuasive value because they predated the enactment of the current regulation is without merit. Regulation 120 and Section 65.121 are identical. By logical extension of the Board's argument, whenever a court strikes down an administrative regulation, the agency can defy that judicial ruling simply by re-promulgating and renumbering the same regulation, without any intervening change in the enabling statute.

The Board's argument that it cannot ignore its own regulation likewise lacks merit under the circumstances of this case. The Board is not free to continue following a regulation that an appellate court has deemed unauthorized. <u>Accord</u> <u>Comite de Apoyo a los Trabajadores Agricolas v. Solis</u>, 933 F. Supp.2d 700 (E.D. Pa. 2013), <u>dismissed</u> <u>on</u> <u>other</u> <u>grounds</u>, 46 F. Supp.3d 550 (E.D. Pa. 2014) (federal agency could not continue enforcing rule after federal court invalidated it). <u>See</u> <u>Northwestern Youth Servs., Inc. v. Dep't of Pub. Welfare</u>, 66 A.3d at 301, 311 (Pa. 2013) (development of Pennsylvania courts' deference to administrative agency rules has followed the development of federal administrative law). Similarly, assuming the Department may define by regulation a term not defined in the UC Law, it still is not free to do so by applying a definition that has been expressly rejected by an appellate court. <u>Id.</u>

Notably, <u>the Board itself</u> found in <u>Vitolins</u> and <u>Springer</u> that net earnings of a sideline business must take into account all business deductions, not only those few enumerated in Regulation 120. Here, the Board declines to construe the same language the same way. The Board asserts it is not bound by its prior

10

interpretation of the language of Regulation 120, even though that interpretation garnered judicial approval.

However, the Board still must acknowledge its own precedents, and if it does not follow them, it must expressly overturn or distinguish them. Van Ness v. Bureau of Prof'l & Occupational Affairs, (Pa. Cmwlth., No. 558 C.D. 2014, filed November 6, 2014), 2014 Pa. Commw. Unpub. LEXIS 655 (unreported).[5] Failure to expressly overturn or distinguish its prior rulings, without explanation, constitutes a clear error of law by the Board. Id. Moreover, as the Pennsylvania Supreme Court observed, "the deference owed to an agency interpretation 'will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" Northwestern Youth Servs., Inc. v. Dep't of Pub. Welfare, 66 A.3d 301, 312 (Pa. 2013) (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)).

Here, the Board made no attempt to distinguish or overturn its decisions concerning identical regulatory language in Vitolins and Springer; nor did the Board otherwise explain its departure from those decisions. It simply ignored them, thereby committing legal error.

The Board argues the Superior Court's decisions in Vitolins and Springer are not persuasive because courts in more modern cases apply a

---

[5] We view Van Ness v. Bureau of Prof'l & Occupational Affairs, (Pa. Cmwlth., No. 558 C.D. 2014, filed November 6, 2014), 2014 Pa. Commw. Unpub. LEXIS 655 (unreported) to be persuasive. 210 Pa. Code §69.414(a).

11

presumption of reasonableness to agency regulations that the Superior Court did not accord Regulation 120. This argument implies the Superior Court would have decided Vitolins and Springer differently had it analyzed Regulation 120 with a presumption of reasonableness. This Court is unpersuaded by this implicit assertion. The Superior Court's conclusion that the effect of Regulation 120 was "absurd," Vitolins, 199 A.2d at 478, evidences its determination that the regulation was not reasonable. Thus, there is no indication that expressly applying the rebuttable presumption of reasonableness of a regulation would have changed the Superior Court's conclusion in Vitolins and Springer.

Based on the foregoing discussion, this Court concludes the Superior Court's decisions in Vitolins and Springer offer persuasive precedent, and the Board erred as a matter of law by failing to deduct all of Claimant's business expenses from her gross revenue in calculating her net earnings from her sideline business.

## B. The Department's Regulatory Authority

Claimant next argues that even without considering the Superior Court's decisions in Vitolins and Springer, this Court should find Section 65.121 is inconsistent with the UC Law and is not reasonable. The Board responds that the regulation is legislative, not merely interpretive in nature, and therefore is mandatory and binding on both the Board and this Court. Claimant counters that Section 65.121 is not a valid legislative regulation; rather, it is at most an interpretive regulation that this Court may disregard.

12

Both parties cite <u>Slippery Rock Area School District v. Unemployment Compensation Board</u>, 983 A.2d 1231 (Pa. 2009), for its discussion of the contrast between legislative and interpretive regulations.

A legislative regulation creates a controlling standard of conduct. <u>Id.</u> at 1239. A legislative regulation is valid if it is adopted pursuant to delegated agency power, its adoption follows proper administrative procedure, and it is reasonable. <u>Id.</u> at 1236. A legislative regulation, if valid, is mandatory and binding. <u>Id.</u>

By contrast, an interpretive rule construes, but does not expand, the terms of a statute. <u>Id.</u> at 1239. An interpretive regulation is valid if it genuinely tracks the meaning of the statute it construes. <u>Id.</u> at 1236. However, an interpretive regulation is merely entitled to some deference. <u>Id.</u> A court may disregard an interpretive regulation it finds unwise or violative of legislative intent.[6] <u>Uniontown Area Sch. Dist. v. Pa. Human Rels. Comm'n</u>, 313 A.2d 156 (Pa. 1973).

### 1. The Scope of the Enabling Statute

An agency regulation is interpretive, rather than legislative, if the agency is without lawmaking power or fails to follow the required procedure. <u>Slippery Rock</u>, 983 A.2d at 1237. Here, Claimant does not allege any procedural irregularity in the adoption of Section 65.121. Rather, Claimant asserts the regulation is interpretive because the Superior Court found Regulation 120 was

---

[6] This Court implicitly disregarded Section 65.121 in <u>Lowman v. Unemployment Compensation Board of Review</u>, ___ A.3d ___ (Pa. Cmwlth. 2018) (<u>en banc</u>), 2018 Pa. Commw. LEXIS 52, *13 n.10, in which we noted that the calculation of the claimant's part-time "earnings" as an Uber driver needed to take into account not only what Uber paid him, but his associated expenses.

13

beyond the Department's rulemaking authority, and the Department was without power to reenact a legislative regulation in order to override an appellate court decision. This argument has merit.

The Board does not point to any alteration in Section 65.121 that would distinguish it from Regulation 120. Therefore, once the Superior Court held in Vitolins and Springer that defining "net earnings" by regulation was beyond the Department's authority, the Department was not free to simply re-promulgate the same regulation without any intervening change in the authorizing statute, Section 402(h).

## 2. Reasonableness of Section 65.121

To be valid, a legislative regulation must also be reasonable. Slippery Rock. Here, Claimant argues that in addition to exceeding the Department's regulatory power, Section 65.121 is unreasonable. We agree.

As the Superior Court explained, the legislature added Section 402(h) to the UC Law specifically to correct the "gross inequity" arising from the denial of all UC benefits because of a part-time sideline business. Vitolins, 199 A.2d at 476-77. The Department's regulation so severely limits the deductions from gross income of a sideline service business as to eliminate any distinction between gross and net income. However, a claimant with a sideline business selling goods can deduct the cost of those goods and related expenses. As a result, a claimant with a sideline service business may lose some or even all UC eligibility, even though the sideline business operates at a loss, while a similarly situated claimant with a sideline

14

sales business does not. A regulation that creates such a result is unreasonable and contrary to the remedial equalizing intent of Section 402(h).

Based on the foregoing discussion, the Department lacked legal authority to re-promulgate the regulation after an appellate court found it was unauthorized. Moreover, the regulation is not reasonable. Therefore, the Board erred as a matter of law in refusing to consider Claimant's business deductions in calculating her net income from her sideline business.

## C. Seasonal Nature of Claimant's Sideline Business

Claimant contends the Board failed to consider her alternative argument that her sideline business is seasonal because it generates income mainly during one month in the spring and one month in the fall. Claimant testified to that effect at the hearing, but did not specify which periods were the busy ones for her sideline business. In the event this Court finds the sideline business generated positive net income, Claimant seeks a remand to the Board for a determination of whether such income was applicable to any of the weeks for which she sought UC benefits.

In light of this Court's disposition of this case, Claimant's final issue is moot. However, for completeness, we address it briefly here.

As explained above, the legislature delegated to the Department the determination of how to allocate seasonal income in calculating weekly UC benefits. Claimant asserts that 34 Pa. Code §65.122 (Section 65.122) requires income from a

15

seasonal business to be applied to the weeks in which the business normally operates. Section 65.122, however, specifically applies to earnings calculations made in accordance with 34 Pa. Code §65.113 (Section 65.113), relating to the computation of a claimant's weekly wage. Claimant offers neither an analysis nor a citation of authority to support the application of Section 65.122 to calculations of net earnings of a sideline business under Section 65.121. Moreover, Claimant's argument implies that a year-round business with busy seasons is equivalent under the UC Law to a business operating only seasonally. Claimant likewise offers no support for this argument.

Claimant has not developed her argument sufficiently to allow meaningful appellate review. Therefore, regardless of mootness, this Court finds Claimant waived this issue. See Khan v. Bureau of Prof'l & Occupational Affairs, (Pa. Cmwlth., No. 1047 C.D. 2016, filed November 21, 2017), 2017 Pa. Commw. Unpub. LEXIS 885 (unreported).

## IV. Conclusion

Based on the foregoing discussion, this Court reverses the Board's order and remands to the Board for recalculation of Claimant's UC benefits, consistent with the holdings of the Superior Court in Vitolins and Springer.

_____
ROBERT SIMPSON, Judge

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Valerie S. Lerch,                          :
                Petitioner       :
                             :
        v.                         :       No. 748 C.D. 2017
                             :
Unemployment Compensation                  :
Board of Review,                           :
                Respondent      :

## O R D E R

**AND NOW**, this 12th day of March, 2018, the order of the Unemployment Compensation Board of Review is **REVERSED**. This case is **REMANDED** to the Board for recalculation of Claimant's unemployment compensation benefits, consistent with this opinion.

Jurisdiction is relinquished.

 

                                      _____
                                        ROBERT SIMPSON, Judge