IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eric H. Talbert,                         :
                        Petitioner       :
                                         :
        v.                               :       No. 306 C.D. 2023
                                         :
Pennsylvania Public Utility              :       Submitted: August 8, 2025
Commission,                              :
                        Respondent       :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE LORI A. DUMAS, Judge
          HONORABLE MATTHEW S. WOLF, Judge


OPINION
BY JUDGE McCULLOUGH                           FILED: September 23, 2025


        On April 3, 2023, Eric H. Talbert (Talbert) petitioned for review of the
March 2, 2023 order of the Pennsylvania Public Utility Commission (PUC), granting
Pennsylvania-American Water Company's (PAWC)[1] petition for a declaratory order.
On March 8, 2024, Talbert voluntarily discontinued his appeal in this Court. Presently
before the Court are the cross-applications for an award of taxable costs on appeal and
for attorney's fees filed by Talbert and PAWC. Upon review, we deny both
applications.

## I.    Factual and Procedural Background

        Talbert is a resident of Chester County, Pennsylvania. PAWC is the
owner or operator of the water distribution system that provides Talbert's home with
tap water. On October 25, 2017, Talbert called PAWC to complain that his water was

---

[1] On April 3, 2023, PAWC filed a notice of intervention pursuant to Pa.R.A.P. 1531(a).

brown. PAWC informed Talbert that firefighters were using fire hydrants, stirring up sediment in the water lines. After the firefighting activities ceased, PAWC flushed Talbert's lines. Talbert later reported to PAWC that he had a leak in the ceiling of his garage, due to an overflowing toilet on the first floor of his house. PAWC's insurer, Travelers Insurance Co., denied that PAWC was responsible for Talbert's toilet overflow. At that point, Travelers surmised that Talbert's issues were caused by a water hammer[2] created by the fire department when the hydrant used by the fire department was shut off too quickly.

A. Proceedings in Federal Court and Before the PUC

On October 25, 2019, Talbert filed a class action lawsuit against PAWC and certain affiliates in the United States District Court for the Eastern District of Pennsylvania. Talbert alleged that PAWC negligently flushed its water system, which caused his toilet to overflow and flood his house. He also alleged that PAWC was still at fault for his damages, even if firefighters' use of a fire hydrant caused a water hammer in PAWC's water system because PAWC negligently allowed the water hammer to travel through its system to Talbert's house.

On May 10, 2021, the District Court issued an order referring certain claims that concern the reasonableness, adequacy, and sufficiency of PAWC's water service to the PUC pursuant to the primary jurisdiction doctrine. The Federal court stayed proceedings pending a final order of the PUC.

---

[2] A water hammer is "the momentary increase in pressure inside a pipe caused by a sudden change in direction or velocity of the water in the pipe." (PUC Opinion and Order, at 5 n.3.)

On February 14, 2020, PAWC filed a Petition for Declaratory Order with the PUC, asking it to declare it complied with the Pennsylvania Public Utility Code (Code),[3] the PUC's regulations and orders, and PAWC's PUC-approved tariff.

During discovery before the PUC, it was determined that Talbert's toilet leaked from the bowl (which is supplied by wastewater), not the tank (which is supplied by tap water). Given that information, PAWC's expert engineer, Gerald DeBalko, opined that the water-hammer-traveling-through-tap-water explanation could not have been the cause of the damage to Talbert's house. Accordingly, PAWC stopped arguing that Talbert was injured by a water hammer caused by firefighter activities.

Two evidentiary hearings were held before the Administrative Law Judge (ALJ) on January 26, 2022, and January 27, 2022. At the start of the hearing, the ALJ heard arguments on several outstanding motions to compel filed by Talbert. Talbert claimed that PAWC failed to produce (1) an unredacted copy of Travelers' complete claim file; and (2) PAWC's computerized records, including the non-revenue water (NRW) spreadsheet.[4] The ALJ ruled against Talbert, finding that PAWC had provided the records to which it had access, and PAWC was not in possession of an unredacted version of Travelers' claim file.

On September 13, 2022, the ALJ served her Initial Decision, finding that PAWC's actions were consistent with the Code, the PUC's regulations and orders, and PAWC's Tariff. The ALJ concluded that PAWC had demonstrated that Talbert's damage was not caused by its negligence or errors. Specifically, the ALJ found that Talbert's damage was not caused by a water hammer or by any negligent actions of

---

[3] 66 Pa.C.S. §§ 101-3316.

[4] According to the Petition for Review, the NRW spreadsheet provides details about all tap water that did not go through a customer's meter for a particular water distribution system. (Petition for Review, at 6, ¶ 34.)

PAWC. The ALJ found, based on Talbert's testimony, that the water bubbled up from the toilet bowl, not from the toilet tank, and resulted from pressures and problems within the **wastewater** system in and/or near Talbert's residence. The ALJ also rejected Talbert's argument that the pressure coming from the wastewater system was a direct result of the action of PAWC's employees when they flushed water on October 25, 2017, out of the water system and directly into the manhole located near Talbert's residence. The ALJ found that the uncontroverted evidence showed that PAWC employees did not direct water into the sewer manhole that day. The ALJ further concluded that the evidence discovered later, based on an inspection by Talbert's plumber, suggested the damage Talbert experienced may have resulted from flaws in his sewage system.

In an Opinion and Order entered March 2, 2023, the PUC adopted the ALJ's decision, upholding her conclusion that the damage to Talbert's residence did not result from negligence or errors of PAWC, and finding no merit in Talbert's argument that PAWC improperly withheld discovery. (PUC Opinion and Order, at 12.)

B. Proceedings in this Court

On March 30, 2023, Talbert petitioned for review of the PUC's March 2, 2023 order. In his Petition for Review, Talbert raised 27 objections to the PUC order. *See* Petition for Review, at 8-14, ¶¶ 50-77. As relief, he asked this Court to remand to the PUC and rule that: (1) he is entitled to a copy of the computerized records PAWC keeps, including the NRW spreadsheet, regarding what flushing of PAWC's occurred on October 25, 2017; and (2) he is entitled to unredacted copies of Travelers' claim file.

On June 5, 2023, the PUC filed the agency record, and the Court issued a briefing schedule the same day. On June 23, 2023, Talbert filed a notice stating that he had elected to defer the preparation of a reproduced record pursuant to Pa. R.A.P. 2154(b). Despite receiving several extensions, Talbert never filed a designation of reproduced record in compliance with Rule 2154. On January 10, 2024, this Court issued a Dormant Order, directing Talbert to file the reproduced record by January 24, 2024. The order stated that Talbert's "reproduced record shall be filed (4 copies) and served (1 copy) within 14 days of the exit date stamped on this Order or this appeal shall be dismissed as of course." (Dormant Order, 1/24/24, at 1.) He did not do so. On February 23, 2024, PAWC filed a Motion to Dismiss the petition for review because Talbert failed to file his reproduced record.

On March 8, 2024, Talbert filed an Application for Discontinuance of the appeal. According to Talbert, the issues in this appeal involve discovery disputes. Talbert stated that this Court did not need to resolve those disputes because he can pursue further discovery in Federal court when the case is returned to that forum. Therefore, he argued that discontinuing this matter was in the interest of judicial economy and the preservation of administrative resources. In pertinent part, Talbert stated:

> 7. The issues on appeal before this Court largely involve discovery disputes – PAWC withholding its non-revenue-water spreadsheets ("NRW Spreadsheets") and other business records it acknowledges exist which [Talbert] will need for class certification and so he will seek them in class discovery in the District Court rather than continuing to litigate the instant matter in which PAWC has only turned over some handwritten notes.

(Application for Discontinuance at 2.) No answer was filed to the Application for Discontinuance. On May 22, 2024, this Court granted the Application for Discontinuance and dismissed the PAWC's Motion to Dismiss as moot.

On June 4, 2024, PAWC filed an Application for an Award of Taxable Costs and Itemized and Verified Bill of Costs on Appeal, including an award of reasonable attorneys' fees pursuant to Pa.R.A.P. 2741[5] (Parties Entitled to Costs), Pa.R.A.P. 2762[6] (Procedure for Collection of Costs in Appellate Courts and on Appeal) and Pa.R.A.P. 3751[7] (Taxation of Costs). Talbert filed his Answer on June 17, 2024. Talbert filed his Application for an Award of Taxable Costs and Itemized and Verified Bill of Costs on Appeal, including an award of reasonable attorneys' fees on June 20,

---

[5] Pa.R.A.P. 2741 provides, in pertinent part:

> (1) If an appeal or other matter is dismissed, costs shall be taxed against the appellant or other moving party in the appellate court unless otherwise agreed by the parties or ordered by the court.

[6] Pa.R.A.P. 2762 provides:

> (a) General rule. Costs on appeal from a lower court shall be collected in the same manner as costs taxed in such court are collected.
>
> (b) Commonwealth Court. Costs in the Commonwealth Court which are not collectable under Subdivision (a) of this rule shall be entered by the Prothonotary of the Commonwealth Court as a judgment against the party liable therefor and shall be collected in the same manner as other judgments of the Commonwealth Court are enforced.

[7] Pa.R.A.P. 3751 provides:

> A party who desires costs to be taxed under Pa.R.A.P. 2762(b) (procedure for collection of costs on appeal) shall state them in an itemized and verified bill of costs which such party shall file with the Prothonotary within 14 days after entry of the judgment or other final order.

2024, and PAWC filed its Answer on July 2, 2024. In its answer, PAWC argued, *inter alia*, that Talbert is barred from seeking costs by Pa.R.A.P. 3751 because he did not seek costs within 14 days of the Court's May 22, 2024 order granting the Application for Discontinuance. On July 11, 2024, the Court ordered the parties to file briefs and reply briefs addressing both applications.

## II.    PAWC's Right to Taxable Costs and Attorney's Fees

### A. Dismissal Versus Voluntary Discontinuance

Pa.R.A.P. 2741(1) provides, in pertinent part, that "[i]f an **appeal** or other matter **is dismissed**, costs shall be **taxed against the appellant** . . . ." (emphasis added). PAWC acknowledges that the Rule does not address the specific facts of this case, in which the appeal is discontinued, but argues that a "voluntary discontinuance" of an appeal should be treated the same as a "dismissal" of an appeal for purposes of taxing costs under Pa.R.A.P. 2741. PAWC suggests there is no difference between a court's dismissal of an appeal and a petitioner's voluntary discontinuance of a petition for review; either scenario concludes the appeal in favor of the respondent. Therefore, PAWC argues, it is entitled to an award of costs and attorney's fees as the "prevailing party."

Under Pennsylvania law, the prevailing party standard is the central criterion for awarding costs in litigation, generally favoring the party achieving a favorable judgment. The statutory basis for the recovery of costs is outlined in Section 1726(2) of the Judicial Code, 42 Pa.C.S. § 1726(2). This statute provides:

> (2) The **prevailing party** should recover his costs from the **unsuccessful litigant** except where the:
>
> (i) Costs relate to the existence, possession or disposition of a fund and the costs should be borne by the fund.

7

> (ii) Question involved is a public question or where the applicable law is uncertain and the purpose of the litigants is primarily to clarify the law.
>
> (iii) Application of the rule would work substantial injustice.

42 Pa.C.S. § 1726(2)(i)-(iii) (emphasis added). Attorney's fees are not considered taxable costs unless authorized by another statute. 42 Pa.C.S. § 1726(1).

The determination of whether a party is the prevailing party involves analyzing who succeeded on significant issues and obtained the benefits sought. The definition of "prevailing party" set forth by the Superior Court in *Profit Wize Marketing v. Wiest*, 812 A.2d 1270 (Pa. Super. 2002),[8] is now settled law in Pennsylvania:

> "[P]revailing party" is commonly defined as "**a party in whose favor a judgment is rendered**, regardless of the amount of damages awarded" [(citation omitted)]. While this definition encompasses those situations where a party receives less relief than was sought or even nominal relief, its application is still limited to those circumstances **where the fact finder declares a winner and the court enters judgment in that party's favor**. Such a pronouncement does not accompany a compromise or settlement.

*Id.* at 1275-76 (emphasis added).

In *Profit Wize*, a sales representative entered into an employment contract with his employer, which included an attorney's fee provision. The employee breached the employment agreement's non-compete provision shortly after terminating his employment with the employer, and the employer brought suit. *Id.* By the time the

---

[8] Although not binding on this Court, Pennsylvania Superior Court decisions may be cited for their persuasive value when they address analogous issues. *Lerch v. Unemployment Compensation Board of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

8

parties came before the trial court for a hearing on the employer's motion for a preliminary injunction, the parties had settled their dispute and memorialized the settlement—a permanent injunction—in an agreement. *Id.* As a condition of the settlement, the employer waived its claim for damages but reserved its right to seek attorney's fees and costs. *Id.* As a result, the employer submitted attorney's fee and cost invoices to the trial court, and the parties asked the trial court to determine whether these were reasonable and whether the employer had "prevailed" in the underlying action. *Id.* The trial court concluded that the employer partially prevailed and, therefore, awarded a portion of the attorney's fees and costs requested. *Id.* at 1273.

On appeal, the Superior Court reversed, observing that the employee agreed to pay the employer's attorney's fees and costs in the event that the employer "prevail[ed] in any suit or action." *Id.* at 1275. Because the employment agreement did not define what it meant to prevail, the Superior Court turned to dictionary definitions, observing that to "'prevail' means 'to gain ascendancy through strength or superiority: TRIUMPH.'" *Id.* (quoting Prevail, Merriam-Webster's Collegiate Dictionary 924 (7th ed. 1965)). Additionally, the Superior Court noted that "Black's Law Dictionary . . . defined the verb, prevail, as 'to obtain the relief sought in an action; to win a lawsuit <the plaintiff prevailed in the Supreme Court>.'" *Id.* (quoting Prevail, Black's Law Dictionary 1206 (7th ed. 1999)). In that case, it was held that neither party was the prevailing party because the parties executed a settlement and compromise agreement to end the litigation.

*Profit Wize* thus teaches that a party seeking to recover costs must achieve **from the court** at least some degree of success on the merits. This is consistent with the United States Supreme Court's view that some success on the merits must be obtained before a party becomes eligible for a fee award. *See Ruckleshaus v. Sierra*

9

*Club*, 463 U.S. 680 (1983).  *See also Texas State Teachers Association v. Garland Independent School District*, 489 U.S. 782, 792-93 (1989) (the "touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties"); and *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health*, 532 U.S. 598, 605 (2001) (explaining that the material alteration of the legal relationship of the parties must be marked by "judicial imprimatur").

Although we found no Pennsylvania appellate case law[9] addressing whether the voluntary discontinuance of an appeal constitutes a disposition in favor of the respondent, we have no difficulty in concluding that it does not.  For one, unlike an appellate court's disposition of dismissal, which requires the interposition of some **affirmative judicial relief** by the Court, granting an application for a voluntary and unopposed discontinuance of an appeal does not.  For example, we may dismiss an appeal based on mootness, change of facts or legal circumstances, timeliness, and failure to preserve issues.  In each of these scenarios, the Court must make a judicial ruling and enter an order of dismissal **against** the petitioner in accordance therewith.  In other words, in those situations we affirmatively determine the "winner" of the appeal by holding the appeal is somehow flawed.  In the case of a voluntary discontinuance, the cessation of the appeal does not result from this Court's declaration of the winner or the lack of merit in the petitioner's legal position or right to appeal.

In the instant case, by granting the unopposed Application for Discontinuance, this Court did not grant any judicial relief.  Without any judicial relief, the parties are simply returned to the same position they were in had there been no

---

[9] *But* s*ee Rocco P. Urella, Sr. v. Knight Newspapers, Inc. & Philadelphia Newspapers, Inc. & Creed C. Black & Eugene L. Roberts, Jr.*, 6 Phila. Cnty. Rptr. 154 (Pa. Com. Pl. 1981) (holding that a voluntary discontinuance is not a functional equivalent of an appellate disposition, the former being voluntary and the latter requiring an appellate decision).

appeal.  There is no winner or loser.  For these reasons, we conclude that a voluntary discontinuance of an appeal is not the functional equivalent of an appellate court's disposition of dismissal for purposes of determining prevailing party status under Pa.R.A.P. 2741.  Therefore, PAWC is not a prevailing party for purposes of the award of costs in this Court.[10]

B.  Attorney's Fees

Pa.R.A.P. 2743(3) states that taxable costs include costs authorized by or pursuant to Chapter 27 of the Pennsylvania Rules of Appellate Procedure.  In pertinent part, Pa.R.A.P. 2744 states:

> In addition to other costs allowable by general rule or Act of Assembly, an appellate court may award as further costs damages as may be just, including

---

[10] PAWC argues that the voluntary discontinuance of an appeal has "the same effect as" a dismissal under Pa.R.A.P. 2741, and therefore we should find that a discontinuance may be the basis for an award of costs.  In other words, PAWC believes it is proper to **substitute** "discontinuance" for "dismissal" in Rule 2741.  In support, PAWC cites *Miller Electric Co. v. DeWeese*, 907 A.2d 1051 (Pa. 2006), and *Freidenbloom v. Weyant*, 814 A.2d 1253, 1255 (Pa. Super. 2003), *overruled in part on other grounds by Miller*.

However, PAWC's reckoning and its reliance on these cases misses the mark.  First, neither *Miller* nor *Freidenbloom* involved the voluntary discontinuance of an appeal or Pa.R.A.P. 2741.  These cases concerned questions of when a common pleas court may act on a motion for costs and fees and when a litigant may appeal the denial of costs and fees.  In *Miller*, the Supreme Court noted that taxable costs are generally payable incident to a final judgment, *i.e.*, after termination of the action "by discontinuance or final disposition."  907 A.2d at 1056.  In *Freidenbloom*, the Superior Court held that a praecipe to discontinue "has the same effect as a judgment entered in favor of the defendant" **for purposes of determining whether** the discontinuance **constitutes a final resolution of the case**.  Neither case held that a voluntary discontinuance of an action in the lower court renders the defendant **the prevailing party** for purposes of **awarding** costs.  The fact that a discontinuance in the lower courts equates to a final disposition of the matter for purposes of finality does not compel the conclusion that a discontinuance of an appeal entitles an appellee to costs as the prevailing party under Pa.R.A.P. 2741.  Therefore, we find both *Miller* and *Freidenbloom* to be inapposite to the question presented here, which is whether petitioner's voluntary discontinuance of an appeal **renders the respondent the prevailing party**.

11

(1) a reasonable counsel fee and

(2) damages for delay at the rate of 6% per annum in addition to legal interest, if it determines that an appeal is frivolous or taken solely for delay **or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious**.

Pa.R.A.P. 2744 (emphasis added).

      i.    <u>Dilatory</u>

PAWC argues that it is entitled to an award of attorney's fees[11] because Talbert's conduct in this appeal was dilatory in that he failed to file the reproduced record in November 2023, as required by the Court's briefing schedule. PAWC points out that Talbert also failed to comply with this Court's January 10, 2024 Order directing him to file the reproduced record. PAWC contends that Talbert's failure to file his reproduced record on time forced PAWC to perform additional legal work, namely the preparation of an Application to Dismiss.

"Conduct is 'dilatory' where the record demonstrates that counsel displayed a lack of diligence that delayed proceedings unnecessarily and caused additional legal work." *In re Estate of Burger*, 852 A.2d 385, 391 (Pa. Super. 2004). Further, the definition of "dilatory" is "[d]esigned or tending to cause delay." *Dilatory*, Black's Law Dictionary (11th ed. 2019).

Though Talbert did not file his reproduced record on time, we do not find that his conduct rises to the level that would justify the award of attorney's fees. Part of the delay in the proceedings can be attributed to the fact that the appeal was not in

---

[11] At the time PAWC filed its request for attorney's fees, the amount requested was $134,072.08.

fact dismissed after 14 days as a matter of course as stated in the January 10, 2024 Order. Nor is it clear that Talbert's failure to file the reproduced record on time was designed to delay the proceedings.

ii. Obdurate

PAWC argues it is entitled to attorney's fees because Talbert has obdurately and stubbornly insisted throughout this appeal that PAWC improperly failed to provide him with information during discovery, even after he filed his Application for Discontinuance. For example, in response to PAWC's Application for an Award of Costs, and in his own Application for Costs, Talbert stubbornly insists that the Court find in his favor on the merits of the discovery issues.

Obdurate has been defined as "unyielding; stubborn." *Scalia v. Erie Insurance Exchange*, 878 A.2d 114, 116 (Pa. Super. 2005). "Obdurate conduct" also has been described as "stubbornly persistent in wrongdoing." *In re Estate of Burger*, 852 A.2d at 391.

Here, Talbert's contention that he was entitled to discovery was in response to PAWC's Application for an Award of Taxable Costs in which PAWC argued that his appeal lacked any basis. Even though he filed an Application for Discontinuance, he never conceded that he was not entitled to the discovery. In fact, it seems, from a review of his Application for Discontinuance, that he believes he is entitled to pursue the discovery dispute in the related Federal case even though he discontinued his appeal in this Court. Viewed in this light, although his discovery arguments were ultimately unavailing in this Court due to the withdrawal of his petition for review, his conduct in this regard was not so egregious as to warrant the imposition of attorney's fees.

13

### iii. Vexatious

PAWC next contends it is entitled to attorney's fees because Talbert has been vexatious in repeatedly alleging, without a reasonable basis or probable cause, that PAWC committed fraud on the PUC or the Federal court when it argued that the PUC should hear this case in the first instance pursuant to the primary jurisdiction doctrine,[12] and that PAWC's counsel violated his duty of candor to the ALJ because he failed to advise the ALJ that: (a) PAWC in fact possessed an unredacted version of Travelers' claim file, and (b) it was PAWC's counsel who directed the redactions.[13] PAWC asserts that Talbert had no reasonable basis or probable cause for making these serious allegations of fraud and lack of candor against its counsel.

A party's conduct is considered "vexatious" if it is done "without sufficient grounds in either law or in fact and . . . [with] the sole purpose of causing annoyance." *Thunberg v. Strause*, 682 A.2d 295, 299-300 (Pa. 1996). This Court has defined vexatious as "without reasonable or probable cause or excuse; harassing; annoying." *MFW Wine Co., LLC v. Pennsylvania Liquor Control Board*, 276 A.3d 1225, 1240 (Pa. Cmwlth. 2022). Examples of vexatious conduct include pursuing a claim despite knowing that her pleading lacked any legal basis, *Scalia*, 878 A.2d at 116-17, failing to adequately identify issues in a brief, filing repetitive motions, and raising jurisdictional issues simultaneously in different courts, *Morgan v. Morgan*, 117 A.3d 757 (Pa. Super. 2015), engaging in a relentless crusade in pursuit of claims despite being advised repeatedly that his lawsuit was barred by the doctrine of immunity and

---

[12] *See* Talbert's Answer to PAWC's Application for Costs at 18-19; Talbert's Application for Costs at 20-24.

[13] *See* Talbert's Answer to PAWC's Application for Costs at 19-21; and his Application for Costs at 24-26.

14

that his suit had no legal basis or possible chance of success, *Miller v. Nelson*, 768 A.2d 858, 861-62 (Pa. Super. 2001).

Here, Talbert appears to have made a good faith argument that the PUC incorrectly decided his motion to compel discovery responses. It is not clear to this Court that Talbert made these allegations solely to vex PAWC or its counsel. Indeed, PAWC acknowledges that its theory of the cause of the toilet flood changed during discovery. Accordingly, we conclude that this is not the type of vexatious appeal that warrants an award of attorney's fees and costs.[14]

Because PAWC has not demonstrated that it is entitled to attorney's fees under Rule 2744, we deny its request.

### III. Talbert's Right to Costs and Attorney's Fees

A. Timeliness

PAWC argues that the Court should dismiss Talbert's Application for an Award of Taxable Costs because it was filed after the applicable deadline. We agree. A bill of costs must be filed with the Prothonotary of this Court within 14 days after the entry of judgment or other final order. Pa.R.A.P. 3751. The Official Note to Pa.R.A.P. 2762 states:

> The right to costs in the Commonwealth Court under Subdivision (b) **is lost unless a bill of costs is filed within the time prescribed by Rule 3751** (taxation of costs). (Emphasis added.)

---

[14] That said, the Court cannot leave unaddressed certain statements made by Talbert's counsel in his Brief and his Reply Brief that stray far beyond the limits of zealous advocacy, including that "[r]edacting every stitch of information from an email is not good lawyering – that is fraud," and that "some persons involved in this litigation should consider consulting a criminal defense attorney." (Talbert's Brief, at 36; Talbert's Reply Brief, at 16.) Such rhetoric of this nature is unprofessional, and unbecoming of a member of the bar. Counsel is now put on notice that in the future, this Court will not tolerate such unprofessional attorney conduct.

15

This Court's Order granting Talbert's Application for Discontinuance was issued on May 22, 2024. Talbert's Application was filed on June 20, 2024 (29 days later). Talbert's Application for an Award of Taxable Costs, therefore, is denied because it was filed more than two weeks after the filing deadline. *See Freidenbloom*, 814 A.3d at 155 (holding that, where a fee petition is filed after the applicable deadline, the court lacks authority to act on the petition).

B. Voluntary Discontinuance – Prevailing Party

Even if Talbert's Application for an Award of Taxable Costs was timely, it is without merit. As a general rule, "[t]he prevailing party should recover his costs from the unsuccessful litigant . . . ." 42 Pa.C.S. § 1726(a); Official Note to Pa.R.A.P. 2741. Talbert petitioned for review of the PUC's denial of his motion to compel and its conclusion that the damage to Talbert's residence did not result from negligence or errors of PAWC. Talbert unilaterally and voluntarily discontinued his appeal. Discontinuing the case has the effect of a final judgment on the issues raised in his appeal. The rulings of the PUC that were resolved **against** Talbert **remain in force**, and are now final because he cannot possibly refile his appeal as the time to do so has long passed. *See Manufacturers and Traders Trust Co. v. Greenville Gastroenterology*, 108 A.3d 913, 922 (Pa. Super. 2015) (holding that an order of the trial court dismissing the action became final when appellant discontinued its appeal in the Superior Court). Therefore, Talbert is not the "prevailing party" in any sense of the term.

Nevertheless, Talbert claims that he is the prevailing party and PAWC is the unsuccessful litigant in the instant proceeding because "he has gotten PAWC to drop its claim of firefighter involvement and therefore any negligence on [the firefighters'] part." (Talbert's Brief p. 52.) In other words, he suggests that the filing

16

of the appeal was the catalyst that helped him accomplish what he sought to achieve by the Federal lawsuit.[15]  This claim has no merit.

First, Pennsylvania Courts have not fully embraced the catalyst test of awarding attorney's fees in all circumstances.  Our application of the test has, to date, been limited to the fee-shifting provisions in environmental statutes and involved our consideration of whether a "prevailing party" includes plaintiffs whose instigation of environmental litigation prompts defendants to cease their offensive conduct voluntarily.  *See Solebury*; *Upper Gwynedd*; *Clean Air Council v. Department of Environmental Protection*, 289 A.3d 928 (Pa. 2023); *Lower Salford Township Authority v. Department of Environmental Protection*, 67 A.3d 50 (Pa. Cmwlth. 2013); *Chalfont-New Britain Joint Sewage Authority v. Department of Environmental Protection*, 24 A.3d 470 (Pa. Cmwlth. 2011).

Second, Talbert's claim that the filing of his appeal prompted PAWC to drop its defense of firefighter negligence is not borne out by the record.  PAWC readily stopped pursuing its firefighter negligence defense after its expert debunked the theory during discovery in the PUC proceedings.  Regardless, eliminating the theory of firefighter negligence from the case does not change the fact that the PUC ruled that PAWC was not negligent, and that by discontinuing his appeal, that ruling became

---

[15] This is referred to as the "catalyst theory," which posits that a plaintiff is a "prevailing party" if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct. *Buckhannon*, 532 U.S. at 62-10.  Notably, the U.S. Supreme Court has rejected the catalyst theory as permissible basis for the award of attorney's fees and costs.  Our Pennsylvania Supreme Court, however, approving Justice Ginsburg's dissenting opinion in *Buckhannon*, has sanctioned the application of the catalyst analysis in reviewing fee applications before the Environmental Hearing Board. *See Solebury Township v. Department of Environmental Protection*, 928 A.2d 990 (Pa. 2007) ("the practical relief sought . . . should be considered when characterizing [the requesting party] as [a] prevailing part[y]" for the purpose of determining when a party is entitled to fees and costs under Section 4(b) of the Surface Mining Conservation and Reclamation Act"); *Upper Gwynedd Towamencin Municipal Authority v. Department of Environmental Resources*, 9 A.3d 255 (Pa. Cmwlth. 2010).

17

final. Even if PAWC conceded the firefighter negligence theory, that concession yielded no benefit to Talbert in the end. For these reasons, we decline to apply the catalyst test and find that Talbert is the prevailing party.

### C. Attorney's Fees and Delay Damages

Talbert claims that PAWC and its counsel should be ordered to pay his filing fee of $90.25, together with all of his attorney's fees accrued to date, in all forums, in the amount of $231,453.84, together with delay damages, based on (1) alleged misrepresentations made by PAWC **in the proceedings before the PUC**; (2) PAWC's responses to discovery requests **in the Federal lawsuit; (**3) PAWC's alleged failure to produce its computerized NRW records **in the proceedings before the PUC**; and (4) its alleged withholding of an unredacted copy of the investigation file of its insurer **in the proceedings before the PUC**. *See* Talbert's Br. at 2-56. Talbert argues that PAWC and its counsel committed fraud on this Court by continuing to represent in PAWC's brief on the merits that PAWC did not possess an unredacted copy of its insurer's file and did not improperly withhold PAWC's computerized NRW records.

We decline to award attorney's fees or delay damages to Talbert for the following reasons. First, Talbert asks this Court to award him a reasonable attorney's fee for the entire time he spent litigating this matter before the Federal court and the PUC and not just before this Court. However, the "Commonwealth Court, sitting as an appellate court, ha[s] no power under any statute or rule to award counsel fees for proceedings below." *Gossman v. Lower Chanceford Township Board of Supervisors*, 469 A.2d 996, 998 (Pa. 1983). *See also Folk v. Mifflin Township Zoning Hearing Board*, 317 A.3d 716, 727 (Pa. Cmwlth. 2024) (Commonwealth Court had no power to award attorney's fees for proceedings conducted before the township zoning hearing board). Talbert must prove that PAWC and/or its counsel were obdurate or vexatious

during these appellate proceedings. On that issue, Talbert does not identify anything that PAWC and/or its counsel did during these appellate proceedings that was obdurate or vexatious. PAWC simply advocated that the Court affirm the PUC's discovery decisions below. That does not amount to obdurate or vexatious conduct.

Talbert's bald insistence, despite the PUC's finding to the contrary, that PAWC and its counsel have a copy of the unredacted investigation file in their possession and withheld computerized NRW records is not evidence of obdurate or vexatious conduct. Rather, it is an attempt to relitigate the same issues that were resolved by the PUC and made final by Talbert's discontinuance of his appeal from the PUC's order. We reject Talbert's attempt to collaterally attack the judgments that have already been entered in this matter. *Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995) (law of the case "doctrine refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in earlier phases of the matter").

Lastly, with respect to his request for damages for delay at the rate of 6% per annum, pursuant to Pa.R.A.P. 2744(2), Talbert does not explain why a party whose case was voluntarily discontinued qualifies for delay damages. Therefore, we reject this claim as well. *See Township of Marple v. Pennsylvania Public Utility Commission*, 294 A.3d 965, 971 n.8 (Pa. Cmwlth. 2023) (*en banc*) (failure to develop those arguments waives the issues).

Accordingly, we find that there is no basis to award Talbert attorney's fees or delay damages.

## IV.    Conclusion

For the foregoing reasons, we deny the cross-Applications for an Award of Taxable Costs and Itemized and Verified Bill of Costs on Appeal filed by PAWC and Talbert.  We also do not award attorney's fees or delay damages to either party because we do not deem either party's conduct in this appeal as frivolous, vexatious, or obdurate.

_____
PATRICIA A. McCULLOUGH, Judge


Judge Fizzano Cannon  did not participate in the decision for this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eric H. Talbert,                 :
        Petitioner          :
                               :
        v.                     :    No. 306 C.D. 2023
                               :
Pennsylvania Public Utility      :
Commission,                    :
        Respondent       :

## ***ORDER***

AND NOW, this 23rd day of  September, 2025, the cross- Applications for an Award of Taxable Costs and Itemized and Verified Bill of Costs on Appeal filed by Eric H. Talbert and Intervenor Pennsylvania-American Water Company are DENIED.  The cross-applications for an award of attorney's fees and delay damages are also DENIED.

_____
PATRICIA A. McCULLOUGH, Judge