# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Edward Smith, : 
          Petitioner : 
        : No. 322 M.D. 2023
       v. : 
        : Submitted: April 8, 2025
Pennsylvania Board of Probation : 
and Parole and the Pennsylvania : 
Department of Corrections, : 
          Respondents : 

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE LORI A. DUMAS, Judge

OPINION BY
JUDGE DUMAS                                    FILED:  December 9, 2025

        Edward Smith (Petitioner) has filed *pro se* a petition for relief in the nature of a writ of habeas corpus (Petition) in this Court's original jurisdiction. Petitioner seeks his immediate release from incarceration. In response, the Pennsylvania Parole Board (Board) and the Department of Corrections (Department) (collectively, "Respondents") have filed preliminary objections asserting Petitioner's failure to (1) exhaust administrative remedies and (2) state a claim upon which relief can be granted.[1] After careful review, we conclude that we lack jurisdiction over Petitioner's claim and, consequently, transfer this matter to the Court of Common Pleas of Allegheny County (Common Pleas) for disposition.

---

[1] The Board also objected to improper service, which this Court sustained. *See* Order, 11/1/23. The Court directed Petitioner to effectuate proper service and indicated that it would withhold ruling on the remaining preliminary objections pending compliance with the order. *See id.* Petitioner subsequently complied. *See id.*

# I. BACKGROUND[2]

Petitioner is an inmate currently incarcerated at the State Correctional Institution at Greene (SCI-Greene). On July 17, 2023, Petitioner filed the instant Petition, naming the Board and the Department as respondents. In his Petition, Petitioner seeks his immediate release from custody, averring that his current sentence has been calculated incorrectly, resulting in him remaining incarcerated beyond the expiration of his lawful maximum term.

Petitioner was originally sentenced to two consecutive terms of imprisonment: one of 5 years, 10 months to 11 years, 8 months, and another of 10 to 20 years. After being released on parole, the Court of Common Pleas of Allegheny County granted his Post Conviction Relief Act (PCRA)[3] petition on January 25, 2002, which vacated his original sentence. The court resentenced him to an aggregate term of 10 to 20 years, with an effective date of October 8, 1985. *See* Ex. H-1, Order of Sentence – PCRA Order of June 9, 1983, is Vacated, Docket No. CP-92-CR-0009321-1982.

Following his resentencing and subsequent parole, Petitioner incurred multiple technical and criminal parole violations, resulting in numerous recalculations of his sentence. After several instances of reparole and reincarceration, the Board issued a modified action that, according to Petitioner,

---

[2] Unless stated otherwise, we derive this background from those alleged in the Petition. *See* Pet. for Writ of Habeas Corpus, 7/17/23. Additionally, Petitioner attached exhibits to his petition; any citations to said exhibits are specifically noted. *See Foxe v. Pa. Dep't of Corr.*, 214 A.3d 308, 310 n.1 (Pa. Cmwlth. 2019) (observing that courts reviewing preliminary objections may not only consider the facts pleaded in the petition for review, but also any documents or exhibits attached to it).

[3] 42 Pa.C.S. §§ 9541-9546.

recalculated his maximum sentence date.[4]   He contends that, based on this modification, subsequent sentence calculations imposed on him by the Department should have been adjusted accordingly and that his sentence should have concluded on March 29, 2013.   Although Petitioner was later arrested and received a new sentence, he maintains that the Department should have given him credit for additional periods of time served.   He argues that this new sentence should have expired on March 29, 2023, based on the expiration of his prior sentence.

Petitioner further asserts that the Department has acknowledged errors in his sentence computation.   In support, he cites a memo dated November 21, 2017, from the Department's Records Administrator, which he interprets as an admission that his maximum date was miscalculated.   *See* Dep't of Corr. Memo, 11/21/17.[5] When the Board failed to act on the Department's "recalculation," Petitioner contacted the Department again.   In response, the Department issued another memo on April 25, 2023, which, according to Petitioner, confirmed that the Board should recalculate his sentence.[6]   *See* Dep't of Corr. Memo, 4/25/23.   Despite these communications, Petitioner avers that the Board has taken no corrective action, and

---

[4] We note that Petitioner has not attached any Board decisions in support of his claims to his Petition.  *See generally* Pet. for Rev., 7/17/23.

[5] In this memo, the Department seemingly summarizes Petitioner's contentions, reciting his timeline, and offering an opinion that "the Board would I believe have to rescind the last Board action reflecting a PV maximum date of 7/5/2016 since that is no longer the maximum. . . ." *See* Dep't of Corr. Memo, 11/21/17, at 2.

[6] In relevant part, the letter states: "It appears that the Parole Violation calculations were not recalculated on at [sic] JV3900, as such MX9169 has not been recalculated either.  The [Board] will need contacted [sic] on this.  I have attached your 03/29/2023 request and documents and have forwarded them to the [Board] for review/possible recalculation."  Dep't of Corr. Memo, 4/25/23.

he is now unlawfully detained beyond his maximum term. Accordingly, Petitioner seeks immediate *habeas* relief and requests his immediate release from custody.[7]

On October 26, 2023, the Board filed preliminary objections, asserting improper service and failure to exhaust all administrative remedies. *See* Bd.'s Prelim. Objs., 10/26/23, at 1-2. The Board contends that Petitioner is challenging the calculation of his parole violation maximum date, a matter within this Court's appellate jurisdiction only after all administrative remedies have been exhausted and cannot be addressed in its original jurisdiction. *See id.* Following the Board's filing, this Court issued an order on November 1, 2023, directing Petitioner to serve his Petition on the Board, the Department, and the Attorney General's Office. *See* Order, 11/1/23. Petitioner effectuated service on all parties on December 19, 2023. *See* Certificate of Serv. Filed, 12/19/23.

On December 20, 2023, the Department filed its own preliminary objections under Pa.R.Civ.P. 1028(a)(7), asserting that Petitioner failed to pursue available administrative remedies before seeking judicial relief. *See* Dep't's Prelim. Objs., 12/20/23. The Department also raised a demurrer, contending that Petitioner failed to state a claim upon which relief could be granted. Specifically, the Department maintains that the Petition is more appropriately characterized as a request for mandamus relief, and Petitioner has not demonstrated a clear legal right to such relief. *See id.* at 4-6. The Department further contends that Petitioner's challenge is directed at the Board's parole-related decisions, not the Department's

---

[7] Specifically, Petitioner states that he "is being held beyond his maximum prison term and that [Respondents] ha[ve] failed to take any action to correct this illegality," and "[a]s a result of their failure to act, the Petitioner . . . is entitled to immediate . . . release from custody." *See* Pet. for Rev., 7/21/23, at 4.

4

sentence computation, and that Petitioner has not established any error in sentence recalculation. *See id.* at 6.

On January 19, 2024, this Court ordered Respondents to file briefs on or before February 20, 2024, and directed Petitioner to file his brief on or before March 21, 2024. Respondents timely filed their briefs; however, Petitioner failed to submit a brief.

## II. DISCUSSION

Generally, we would consider the merits of Respondents' preliminary objections. However, we cannot do so in this instance because we lack original or ancillary jurisdiction to consider this matter.[8]

The original jurisdiction of this Court is unique, as it is wholly statutory and narrowly circumscribed. *See* 42 Pa.C.S. § 761; *see also id.* §§ 762-764. Specifically, Section 761(a)(1)(i) of the Judicial Code provides that the Commonwealth Court shall have original jurisdiction of all civil actions or proceedings "[a]gainst the Commonwealth government, including any officer thereof, acting in his official capacity, except [] actions or proceedings in the nature of applications for a writ of habeas corpus or post-conviction relief not ancillary to proceedings within the appellate jurisdiction of the court." *See* 42 Pa.C.S. §761(a)(1)(i). Ancillary jurisdiction is defined as the "[p]ower of a court to adjudicate and determine matters incidental to the exercise of its primary jurisdiction of an action." *Kester v. Pa. Bd. of Prob. & Parole*, 609 A.2d 622, 625 (Pa. Cmwlth. 1992) (quoting Black's Law Dictionary, 5th ed. 1979). A matter is not ancillary

---

[8] The Department and the Board have not expressly challenged our original jurisdiction over Petitioner's claim. *But see* Bd.'s Prelim. Objs. at 1-2 (recognizing that we lack original jurisdiction over its parole decisions); Bd.'s Br. at 5 (noting that this Court cannot entertain habeas corpus petitions); Dep't's Br. at 1 (same). Nevertheless, we may address our jurisdiction *sua sponte*. *Pennhurst Med. Grp., P.C. v. Dep't of Pub. Welfare*, 796 A.2d 423, 425 n.2 (Pa. Cmwlth. 2002).

until the court's jurisdiction is actually being exercised—hypothetical appellate authority does not render the matter incidental. *See Kester*, 609 A.2d at 625. If a matter is filed in a court lacking proper jurisdiction, the case should be transferred to the proper tribunal, not dismissed. *See* 42 Pa.C.S. § 5103; *see also Brown v. Pa. Dep't of Corr.*, 81 A.3d 814, 815-16 (Pa. 2013) (criticizing this Court's dismissal of a *habeas corpus* petition for lack of jurisdiction, holding that the appropriate action would have been to transfer the case to the court of record from which the inmate's judgment of sentence originated). Matters of *habeas corpus* lie in the jurisdiction and venue of the court of record from which the order of detention came. 42 Pa.C.S. § 6502;[9] 42 Pa.C.S. § 5301(a).[10]

A writ of *habeas corpus* is an extraordinary remedy that aims to evaluate the legality of one's detention and "is available after other remedies have been exhausted or are ineffectual or nonexistent." *Dep't of Corr. v. Reese*, 774 A.2d 1255, 1260 (Pa. Super. 2001);[11] *Wilson v. Pa. Bureau of Corr.*, 480 A.2d 392, 393

---

[9] Any judge of a court of record is empowered to issue the writ. 42 Pa.C.S. § 6502(a). All the courts of common pleas are courts of record. 42 Pa.C.S. § 321.

[10] Specifically, that section of the Judicial Code states:

> If an appeal or other matter is taken to or brought in a court or magisterial district of this Commonwealth which does not have jurisdiction of the appeal or other matter, the court or magisterial district judge shall not quash such appeal or dismiss the matter, but shall transfer the record thereof to the proper tribunal of this Commonwealth, where the appeal or other matter shall be treated as if originally filed in the transferee tribunal on the date when the appeal or other matter was first filed in a court or magisterial district of this Commonwealth.

42 Pa.C.S. § 5103(a).

[11] Although decisions of the Superior Court are not binding on this Court, they may provide persuasive authority where they address analogous issues. *See Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018); 210 Pa. Code § 65.37; Pa.R.A.P. 126(b) ("'[N]on-precedential decision' refers to an unpublished non-precedential memorandum decision of the Superior Court filed after May 1, 2019 . . . . Non-precedential decisions . . . may be cited for their persuasive value.").

(Pa. Cmwlth. 1984); *Cook v. Garman*, (Pa. Cmwlth., No. 58 C.D. 2021, filed Feb. 28, 2022); *Kester* 609 A.2d at 625 ("[h]abeas corpus is the recognized means for testing the legality of detention"). "An application for a writ of habeas corpus requests the applicant's release from prison." *See Warren v. Dep't of Corr.*, 616 A.2d 140, 142 (Pa. Cmwlth. 1992); *McNair v. Owens*, 576 A.2d 95, 99 (Pa. Cmwlth. 1990); *Reese*, 774 A.2d at 1260 (citing *Commonwealth v. Isabell*, 467 A.2d 1287, 1291 (Pa. 1983)),[12] for the proposition that *habeas corpus* is a "remedy for deliverance from illegal confinement," which includes an "illegal detention resulting from an incorrect computation of [an] appellant's sentence by prison officials"); *Brown v. Dep't of Corr.*, 601 A.2d 1345 (Pa. Cmwlth. 1992) (holding that a petition directly challenging the legality of an inmate's continued detention, on grounds beyond an administrative calculation, properly sounded in habeas corpus); *habeas corpus*, Black's Law Dictionary (10th ed. 2014) (defining *habeas corpus* as a writ "used to test the legality of an arrest or commitment"); *but see Wilson v. Com., Bureau of Corr.*, 480 A.2d 392 (Pa. Cmwlth. 1984) (holding that a petition seeking

---

[12] In *Isabell*, 467 A.2d 1287, our Supreme Court held that a petition brought pursuant to the Post-Conviction Hearing Act (a precursor to the PCRA) was improper for challenging a decision from the department that imposed a parole revocation sentence consecutive to a prior sentence, because the petitioner did not attack the lawfulness of the sentence itself but instead the legality of his continued detention under that sentence. *Id.* at 1291. The *Isabell* Court concluded that such a challenge should instead proceed via *habeas corpus*, since it relates to the lawfulness of confinement, not the legitimacy of the sentence itself. *Id.*

This principle was later distinguished in *Gillespie v. Department of Corrections*, 527 A.2d 1061 (Pa. Cmwlth. 1987), where this Court refused to extend habeas relief to a petition challenging the Board's aggregation of consecutive sentences. In *Gillespie*, the petitioner did not dispute the legality of either sentence or their consecutiveness; rather, he challenged the Board's authority to combine them administratively. *Id.* at 1063-64. This Court held that such a claim fell outside the scope of *habeas corpus*. *Id.* Where *Isabell* involved an attack on the legality of detention imposed administratively, *Gillespie* sought relief from administrative aggregation, not his actual detention *per se*. *Isabell*, 467 A.2d at 1291; *Gillespie*, 527 A.2d at 1063-64.

7

the correction of the Board's action in aggregating a defendant's two sentences does not sound in *habeas corpus*).

Furthermore, Section 6503 of the Judicial Code, 42 Pa.C.S. § 6503, generally provides that "an application for habeas corpus to inquire into the cause of detention may be brought by or on behalf of any person restrained of his liberty within this Commonwealth under any pretense whatsoever." However, "[w]here a person is restrained by virtue of sentence after conviction for a criminal offense, the writ of habeas corpus shall not be available if a remedy may be had by post-conviction hearing proceedings authorized by law." *Id.* The General Assembly has established a distinct statutory process for addressing petitions for habeas corpus or post-conviction relief. The PCRA serves as the exclusive method for "obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose . . . including habeas corpus and coram nobis."[13] 42 Pa.C.S. § 9542. Original jurisdiction over a *habeas* petition "shall be in the court of common pleas. No court shall have authority to entertain a request for any form of relief in anticipation of the filing of a petition" for habeas corpus. *See* 42 Pa.C.S. § 9545.

Typically, a petition challenging the recalculation of a maximum sentence date by the Board is based on a dispute over the Board's calculation of sentence credit for, *e.g.*, time spent at liberty on parole, time spent in a halfway house, time spent in custody on a Board detainer, or time spent in custody without bail while awaiting trial. Such a petition is presented to the Board in the first instance and, if the petitioner is unsatisfied with the Board's disposition, review is sought in

---

[13] *See also Commonwealth v. Larkin*, 235 A.3d 350, 355 (Pa. Super. 2020), which highlights habeas corpus as an extraordinary remedy only appropriate where no other legal remedy exists (noting that the PCRA subsumes the remedy of habeas corpus with respect to the remedies offered under the PCRA). We cite this case for its persuasive value. *See Lerch*, 180 A.3d at 550; 210 Pa. Code § 65.37; Pa.R.A.P. 126(b).

8

this Court's appellate jurisdiction. *See, e.g.*, *Carmichael v. Pa. Parole Bd.*, 338 A.3d 275, 278 (Pa. Cmwlth. 2025).

What takes this case out of that typical scenario and into the realm of *habeas* relief is that, here, the gravamen of Petitioner's claim is that one of his sentences was vacated and altered, such that it was to be served concurrently with another sentence rather than consecutively. *See* Pet. for Writ of Habeas Corpus (Petition), 7/17/23. That change, perforce, reduced Petitioner's aggregate sentence. However, Petitioner avers, the Board's various recalculations of his maximum sentence date failed to reflect that fundamental alteration. Stated differently, Petitioner does not allege that the Board erred in its arithmetic or in deciding what credit to give him in recalculating his sentence. Rather, he contends that the Board failed to comply with *the change in Petitioner's sentence itself* when recalculating his maximum sentence dates.

Specifically, the Department noted in its memo that the sentencing court's order vacating one of Petitioner's original sentences and resentencing to reflect concurrent sentences "was not received into the Department until a later time." Dep't of Corr. Memo, 11/21/17 at 1. Once the vacate order was received, the Department apparently adjusted Petitioner's sentence record accordingly, but the Board's subsequent minimum and maximum recalculations failed to reflect or comply with the Department's adjustment. *Id.* at 2.

In *Isabell*, the dispute centered on whether the sentencing court had imposed consecutive or concurrent sentences. 467 A.2d 1287. The petitioner was challenging the Department's interpretation of the sentence, rather than the lawfulness of that sentence. *Id.* at 1291. The Pennsylvania Supreme Court observed that "[n]either a motion challenging the propriety of the sentence nor a direct appeal

9

from the judgment of sentence properly challenges the discrepancy between the signed sentence and the [Department's] interpretation of it." *Id.* Such a discrepancy, the Supreme Court held, is properly addressed through a petition for a writ of *habeas corpus*. *Id.* Moreover, "[s]uch *habeas corpus* petitions are properly brought in the court which initially imposed the sentence." *Id.*

In *McNair*, this Court considered what it termed "a jurisdictional puzzle" involving a *habeas* petition. 576 A.2d at 96. The petitioner, McNair, was released from prison in 1972 because of his mother's illness, but several months later, a district attorney filed a complaint against McNair alleging escape after he allegedly failed to return to custody. *Id.* at 97. Apparently, no further action was taken on the complaint. Some 15 years later, and 11 years after the expiration of McNair's maximum sentence date in 1976, a common pleas court dismissed the escape charge for lack of prosecution, but the following week, McNair was taken into custody, and his sentence was recalculated, purporting to add 5,428 days onto his sentence maximum as escape time. *See id.*

McNair filed a *habeas* petition in the common pleas court, alleging that he had been released and had never escaped, and that taking him into custody more than 10 years after the expiration of his original sentence was improper. *Id.* at 96. The common pleas court dismissed the action, reasoning that it was not a true *habeas* claim and should have been brought in this Court either as a mandamus action in our original jurisdiction or as an administrative appeal of McNair's sentence recalculation. *Id.* at 97-98. McNair, continuing to assert that the action was properly brought as a *habeas* petition, appealed the dismissal to the Superior Court, which has jurisdiction over appeals from dismissals of *habeas* petitions. *Id.* at 98. The Superior Court transferred the matter to this Court.

10

Notably, McNair was not challenging the lawfulness of his original sentence, nor was he seeking judicial review of a recalculation of his maximum sentence date, as such. *Id.* at 98. Rather, he was challenging the legality of his continued custody based on an allegedly incorrect determination that he had not completed his sentence because of his alleged escape. *Id.* Relying on our Supreme Court's decision in *Isabell*, this Court observed that the "*well known remedy* [*of habeas relief*] *for deliverance from illegal confinement is particularly suited to the wrong* [*of*] *illegal detention resulting from an incorrect computation of* [*a petitioner's*] *sentence by prison officials*." *Id.* at 99 (quoting *Isabell*, 467 A.2d at 1291 (cleaned up; emphasis added)). Having determined, therefore, that "the only meaningful method" to challenge the Department's improper continuation of custody was through a *habeas* petition, the court remanded for a factual hearing on the petition. *Id.* at 99.

In *Reese*, the Superior Court consolidated two cases for appeal. Both cases involved "whether the respective trial courts had jurisdiction to hear and grant . . . [p]etitions for writs of *habeas corpus*." 774 A.2d at 1259. Ultimately, however, the two cases presented a contrast that is significant here.

The first petitioner, Reese, alleged that he was being held after the expiration of his maximum sentence date although no new maximum date had been determined. The Superior Court held that,

> [u]nder these circumstances, . . . the trial court properly exercised jurisdiction of Reese's [p]etition for writ of *habeas corpus*. Even though Reese had challenged the . . . calculation of [his] release date as improper, Reese was being held beyond that date when he filed his *habeas corpus* [p]etition. Thus, the trial court had the authority to hear and rule on Reese's [p]etition. *See Brown*, 601 A.2d at 1347 (holding that a petition which challenges a

11

continued detention, not on the basis of an administrative calculation, is in the nature of *habeas corpus*).

*Id.* at 1260-61.

By contrast, the second petitioner, Richart, who had not yet reached his maximum sentence date, had merely attempted to appeal a recalculation of his sentence. *Id.* at 1261. After that appeal was dismissed as untimely, Richart filed a *habeas* petition. *Id.* The Superior Court held that such a petition was not a proper mechanism for review of a sentence recalculation, explaining that

> [u]nder these circumstances, it appears that Richart was using his [p]etition for *habeas corpus* relief to challenge the Board's recalculation of his maximum release date. This is not a proper use of the writ of *habeas corpus*. *See Wilson*, 480 A.2d at 393 (holding that the correction of a Board action is not a proper use of the writ). At the time he filed his [p]etition for a writ for *habeas corpus*, Richart's maximum sentence, as calculated by the Board, had not expired. Thus, the trial court did not have jurisdiction to hear Richart's [p]etition.

*Id.*

Significantly, the distinction drawn in *Reese* was between the situation of Richart, who was merely challenging a Board recalculation, and the contrasting situation of Reese, who was alleging improper continuation of custody due to the Board's failure to follow his sentence as imposed. Likewise, in *Isabell*, the petitioner was challenging the application of his sentences, not merely a recalculation. *See Isabell*, 467 A.2d 1287. Moreover, in *McNair*, the petitioner was not challenging a mere recalculation, but rather, was alleging that his continued custody based on an alleged previous escape was improper where the escape charge had been dismissed. *See McNair*, 576 A.2d at 96, 98.

12

As in the cases cited above, Petitioner here is not challenging a recalculation of his maximum sentence date, as such. Rather, he is alleging that the Board is failing to comply with his sentence as imposed, in that the Board failed or refused to correct his maximum sentence date after the original sentence had been vacated and a new, shorter sentence was imposed by the sentencing court. *See* Pet., at 2, 3, Nos. 10-11. Further, because he believes his maximum sentence date has already passed under the new sentence, he is not requesting a recalculation, but rather, his release. *See* Pet. at 4 (alleging that he "is being held beyond his maximum prison term and that [Respondents'] [have] failed to take any action to correct this illegality," expressly requesting "immediate habeas corpus relief resulting in his release from custody").

Notably, this case is distinguishable from *Wilson* on two bases. In *Wilson*, the Department failed to correct its records, in which it had erroneously aggregated two consecutive, but actually separate criminal sentences, into one sentence. 480 A.2d at 393. As a result, the petitioner was not considered for parole once the minimum sentence date on the first sentence had passed. Thus, the petitioner in *Wilson* was not alleging legal entitlement to immediate release, but only asserting that the Department erred in aggregating the two sentences. *Id.* Here, however, Petitioner alleges his entitlement to immediate release because the maximum sentence has allegedly been served, rather than consideration for a discretionary parole. *See* Pet., at 2-3. Petitioner's assertions suggest that the Department has updated records to reflect his altered sentence, but the Board is nonetheless refusing to recognize the alteration in the sentence. *See generally* Pet.

The distinction between a petition challenging a recalculation and one challenging illegal ongoing confinement can readily be seen in a hypothetical example. In a case where no post-sentencing events occur that would require

13

recalculating the maximum sentence, such as new convictions, parole violations, or adjustments for street time credit on parole, what remains is the original sentence, with its original maximum sentence date. If the sentencing court later vacated that original sentence and replaced it with a shorter sentence, if the Department updated its records to reflect the new sentence, and if the Board then refused to comply with the new and shorter sentence as reflected in the Department's records, *habeas* relief would be an appropriate mechanism for the petitioner to obtain his release once the maximum sentence date had arrived. Calculation or recalculation of the maximum sentence date, as such, would be no part of the legal issue before the court considering the *habeas* petition.

Like the petitioners in *Isabell* and *McNair*, Petitioner here is seeking *habeas* relief from what he avers is illegally continued confinement after his maximum sentence date. *See McNair*, 576 A.2d at 98-99; *Isabell*, 467 A.2d at 1291. Calculation or recalculation comes into play only because the maximum sentence date here has been affected not only by the replacement of the original sentence, but also by intervening recalculations triggered by post-sentencing events. However, the legal challenge at issue here is to the illegal confinement itself, rather than to any underlying sentence recalculation. The illegal confinement is the *sine qua non* of *habeas corpus* relief. *See, e.g.*, *Brown*, 601 A.2d at 1347 (observing that inmates' challenge to the legality of their continued detention was "grounded not merely on an administrative calculation, but on the theory that [the Department] had been deprived of the authority to continue [their] incarceration" and concluding that "we can scarcely imagine a clearer example of a proceeding in the nature of an application for a writ of *habeas corpus*") (internal quotation marks omitted).

Accordingly, because *habeas corpus* relief would provide the only meaningful avenue of relief for Petitioner, *see McNair*, 576 A.2d at 97-98,

14

jurisdiction lies exclusively with the court of common pleas. *See* 42 Pa.C.S. § 9545. The statutory framework explicitly limits this Court's jurisdiction over habeas corpus petitions and post-conviction relief that are not ancillary to proceedings within our appellate jurisdiction. *See* 42 Pa.C.S. § 761(a)(1)(i). Petitioner does not have any current proceedings within our appellate jurisdiction. Therefore, we lack original and ancillary jurisdiction over the Petition and must transfer it to Common Pleas. *See* 42 Pa.C.S. §§ 761(a)(1), 5103(a); *Brown*, 81 A.3d at 815-16.

### III. CONCLUSION

Petitioner claims that he is incarcerated unlawfully and seeks his immediate release. For the reasons set forth above, we lack original or ancillary jurisdiction to consider this petition for review and, therefore, transfer it to the Court of Common Pleas of Allegheny County for disposition, which shall treat it as a complaint filed in its original jurisdiction. *See Brown*, 81 A.3d at 815; 42 Pa.C.S. §§ 761(a)(1), 5103(a).

**LORI A. DUMAS, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Edward Smith,                :
          Petitioner        :
                               :    No. 322 M.D. 2023
          v.                   :
                               :
Pennsylvania Board of Probation   :
and Parole and the Pennsylvania   :
Department of Corrections,       :
          Respondents     :

# O R D E R

AND NOW, this 9th day of December, 2025, it is hereby ORDERED that Petitioner Edward Smith's Petition for Review is TRANSFERRED to the Court of Common Pleas of Allegheny County (Common Pleas) because this Court lacks original and ancillary jurisdiction.

The Commonwealth Court's Prothonotary shall transmit the record of the above-captioned proceedings to Common Pleas' Prothonotary, together with a copy of this Opinion and Order, as well as a certified copy of this matter's docket entries. Subsequent to transfer, the assigned Common Pleas judge shall rule upon the preliminary objections filed by the Department of Corrections and Pennsylvania Parole Board (Respondents) within 45 days of the transmission of the documents listed above. However, subject to the approval of the assigned Common Pleas judge, Respondents may file amended preliminary objections within 30 days, and Petitioner Edward Smith may respond within 30 days, and then the Common Pleas shall issue its ruling within 45 days.

**LORI A. DUMAS, Judge**